IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SALADIN RUSHDAN,

         Plaintiff,              No. CIV S-12-0562 MCE CKD P

   vs.

HAMKAR, et al.,

         Defendants.       ORDER

_____/

       Plaintiff is a state prisoner proceeding pro se.  He seeks relief pursuant to 42 U.S.C. § 1983.  This proceeding was referred to this court by Local Rule 302 pursuant to 28 U.S.C. § 636(b)(1).  Plaintiff has paid the statutory filing fee for this action.  28 U.S.C. §§ 1914(a), 1915(b)(1).

       The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1),(2).

\\\\\

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir. 1984). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. Neitzke, 490 U.S. at 327. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis. See Jackson v. Arizona, 885 F.2d 639, 640 (9th Cir. 1989); Franklin, 745 F.2d at 1227.

A complaint must contain more than a "formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient to "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). "The pleading must contain something more...than...a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." Id., quoting 5 C. Wright & A. Miller, Federal Practice and Procedure 1216, pp. 235-235 (3d ed. 2004). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, __ U.S. __, 129 S.Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570, 127 S.Ct. 1955). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor. Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).

Fed. R. Civ. P. 8 sets forth general rules of notice pleading in the federal courts. See Swierkiewicz v. Sorema, 534 U.S. 506, 122 S.Ct. 992 (2002). Complaints are required to set forth (1) the grounds upon which the court's jurisdiction rests, (2) a short and plain statement of the claim showing entitlement to relief; and (3) a demand for the relief plaintiff seeks. Rule 8 requires only "sufficient allegations to put defendants fairly on notice of the claims against

1    them." McKeever v. Block, 932 F.2d 795, 798 (9th Cir. 1991).  Even if the factual elements of

2    the cause of action are present, but are scattered throughout the complaint and are not organized

3    into a "short and plain statement of the claim," dismissal for failure to satisfy Rule 8(a)(2) is

4    proper.  McHenry v. Renne, 84 F.3d 1172, 1178 (9th Cir. 1996).

5            Plaintiff brings the complaint against seven named defendants, five of whom are

6    physicians at California State Prison-Sacramento.  He claims defendants were deliberately

7    indifferent to his serious medical needs in violation of the Eighth Amendment.  Plaintiff alleges

8    that following surgery in 1977, he developed keloids, a painful skin condition consisting of

9    lesions and scars, on his neck and chest.[1]  Pursuant to a 1994 settlement agreement in a prior

10   lawsuit, plaintiff was given a treatment plan for keloids in which a dermatologist at University of

11   California – San Francisco, Dr. Grekin, would be responsible for the ongoing treatment of

12   plaintiff's keloids. (Dkt. No. 1 (Cmplt.) at 7.)

13           Plaintiff has attached a copy of the 1994 settlement agreement in Rushdan v.

14   Weden, et al., CIV S-02-1468 EJG PAN P, to the complaint.  (Id. 38-45.)  This 18-year-old

15   agreement concerns plaintiff's medical treatment at CMF.  It provides in part:

16           Claimant is to receive medical care for his Keloidal condition from
             Dr. Roy C. Grekin, M.D. or from anyone designated by Dr. Roy C.
17           Grekin ("Dr. Grekin").  Said medical care rendered by Dr. Grekin
             will in part occur at Dr. Grekin's office and/or associated facilities
18           at [UCSF], on the dates and times specified by Dr. Grekin.

19           Further, Dr. Grekin will also prescribe and/or order medical care
             for the Claimant to be rendered by CDC staff at the California
20           Medical Facility ("CMF") in Vacaville, California.  The Chief
             Medical Officer at CMF will oversee the medical care prescribed
21           and/or ordered by Dr. Grekin for the claimant at CMF for the
             period so prescribed by Dr. Grekin.  The CDC agrees to fully
22           comply with any and all prescriptions and/or orders for medical
             care for the claimant by Dr. Grekin.

23   (Cmplt. at 40-41.)  The agreement also provides:

24   ─────────────────

25        [1] Plaintiff has attached to the complaint a photocopy of a photo of one side of his face labeled
     "original scarring."  (Cmplt. at 69.)  While it is not clear when this photo was taken, plaintiff's
26   condition in the photo appears to be severe and disfiguring, as he claims.

Further, the Claimant is to be housed at CMF for the period that he is receiving medical care from Dr. Grekin.
. . .

The Director of [CDCR] . . . shall be specifically responsible for the implementation of the provisions of this Agreement.

Further, in the event that any provision of this agreement is not implemented the Claimant may bring an action against the Director to obtain performance of any of the provisions of this Agreement.

(Cmplt. at 41-42.)  The court notes that plaintiff is no longer housed at CMF, has not named any of the parties to the 1994 agreement as defendants to this action, and is not suing the Director of CDCR to enforce the agreement as provided by its terms.[2]

In 2001, plaintiff was transferred from CMF to CSP-Sac.  He alleges that after the transfer, he was not returned to Dr. Grekin every 6 to 8 weeks as needed for the "continuous treatment and care" of his keloids.  Rather, his visits to Dr. Grekin were delayed each time for several months and up to five years.  (Cmplt. at 7.)   In a March 2004 inmate grievance attached to the complaint, plaintiff claimed that, despite submitting numerous requests for treatment, he had been at CSP-Sac "for two and a half (2 ½) years without medical treatment resuming" and was losing sleep and unable to work, exercise, or (sometimes) eat without pain.  (Id. at 76.)  In the body of the complaint, plaintiff claims that between 2005 and 2010 he "[was] constantly having to beg & demand that medical staff provide the necessary timely treatment/surgery as Dr. Grekin ordered, which CDC medical staff did not do in a manner to reduce a relapse of condition."[3]  (Id. at 7-8.)  As a result, his condition has "visibly spread on infected areas

---

[2] This breach of contract claim would arise under state law.

[3] In support, plaintiff attaches grievances submitted in 2005 (claiming "same problem, keloids and resulting pain daily," yet "my much needed treatment is non-existent"); 2007 (claiming that plaintiff had returned from surgery four months ago but had not been given his prescribed six-week follow up appointment, and was "still in extreme pain daily"); 2009 (claiming that, apparently following another surgery, he had not been back for his eight-week follow up appointment); and 2010 (claiming that his follow ups with Dr. Grekin were "constantly delayed" and he was "still in constant pain from keloids").  (Id. at 63-66.)

1   (shoulder) and developed into an assortment of other painful and complex symptoms," including

2   "hundreds of ingrown hairs, folliculitis," lumps, and scarring in the face and jaw area which

3   creates difficulty eating.  This worsening of his condition has led to "years of daily pain and

4   discomfort."  (Id. at 8.)

5               Plaintiff claims that Dr. Hamkar (a physician at CSP-Sac), Dr. Sahota (Chief

6   Physician and Surgeon at CSP-Sac), Dr. Ali and Dr. Nangalama (plaintiff's primary care

7   physicians at CSP-Sac), Dr. Bal ( Chief Medical Officer at CSP-Sac), Dr. Thor (on the Medical

8   Authorization and Review Committee), and J. Walker (Chief, California Prison Health Services,

9   Office of Third Level of Appeals - Health Care) were aware of plaintiff's well-documented

10  medical history of keloids and his need for  ongoing treatment.  Plaintiff alleges that these

11  defendants failed to ensure that he received timely and adequate treatment, which caused his

12  condition to worsen.  (Id. at 9-13.)

13              Plaintiff seeks damages and the following injunctive relief:

14              A. For the 'Compromise and Release' treatment plan, signed by the
                Director of CDCR to be followed and Dr. Grekin (specialist) to
15              have authority over the duration of the prescribed treatment/surgery
                care plan.
16
                B. For medical staff at CDCR to provide the arrangement of
17              timely/continuously scheduled Keloid treatment/surgery, so Dr.
                Grekin can effectively treat plaintiff's condition.
18
                C. For plaintiff to receive prescribed pain medication promptly
19              after returning from each keloid treatment/surgery.

20  (Id. at 15.)

21              Administrative grievance records attached to the complaint include defendant

22  Walker's Director's Level decision denying plaintiff's appeal in a decision dated October 28,

23  2010.  (Cmplt. at 26-27.)  Walker concluded that plaintiff had received adequate care for his

24  keloids, citing the following treatment: A December 2009 follow-up surgery for keloid

25  complications; a June 2010 discussion with defendant Sahota in which plaintiff's request for

26  service was approved; an August 2010 "attempt at telemedicine" which was not successful due to

5

1   technical difficulties; an August 2010 examination and further surgery at UCSF; and a plan to

2   return plaintiff to UCSF in six to eight weeks for follow-up treatment.  (Id.)  Other grievance

3   records attached to the complaint appear to be consistent with this series of events in the 2009-

4   2010 timeframe.  (Id. at 33-37.)

5           In an earlier Director's Level Decision dated March 10, 2010, defendant Walker

6   denied another appeal concerning plaintiff's keloids treatment.  (Id. at 54-55.)  The appeal

7   concerned plaintiff's claim that, on five occasions following his June 2009 surgery, he did not

8   receive his pain medication.  Citing plaintiff's follow-up interview with a nurse and medical

9   records indicating that plaintiff had received pain medication from June 4, 2009 to June 10, 2009

10  (see id. at 79), Walker concluded that plaintiff had received adequate medical care.

11          "[T]o maintain an Eighth Amendment claim based on prison medical treatment,

12  an inmate must show 'deliberate indifference to serious medical needs.'"  Jett v. Penner, 439

13  F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).  The two

14  part test for deliberate indifference requires the plaintiff to show (1) " 'a serious medical need' by

15  demonstrating that 'failure to treat a prisoner's condition could result in further significant injury

16  or the unnecessary and wanton infliction of pain,' " and (2) "the defendant's response to the need

17  was deliberately indifferent."  Jett, 439 F.3d at 1096 (quoting McGuckin v. Smith, 974 F.2d

18  1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Techs., Inc. v. Miller, 104 F.3d

19  1133 (9th Cir. 1997) (en banc) (internal quotations omitted)).  Deliberate indifference is shown

20  by "a purposeful act or failure to respond to a prisoner's pain or possible medical need, and harm

21  caused by the indifference."  Jett, 439 F.3d at 1096 (citing McGuckin, 974 F.2d at 1060).  In

22  order to state a claim for violation of the Eighth Amendment, a plaintiff must allege sufficient

23  facts to support a claim that the named defendants "[knew] of and disregard[ed] an excessive risk

24  to [Plaintiff's] health ...."  Farmer v. Brennan, 511 U.S. 825, 837 (1994).

25          In applying this standard, the Ninth Circuit has held that before it can be said that

26  a prisoner's civil rights have been abridged, "the indifference to his medical needs must be

1    substantial.  Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this

2    cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir.1980) (citing

3    Estelle, 429 U.S. at 105-06).  "[A] complaint that a physician has been negligent in diagnosing or

4    treating a medical condition does not state a valid claim of medical mistreatment under the

5    Eighth Amendment.  Medical malpractice does not become a constitutional violation merely

6    because the victim is a prisoner." Estelle, 429 U.S. at 106; see also Anderson v. County of Kern,

7    45 F.3d 1310, 1316 (9th Cir.1995); McGuckin, 974 F.2d at 1050, overruled on other grounds,

8    WMX, 104 F.3d at 1136.  Even gross negligence is insufficient to establish deliberate

9    indifference to serious medical needs. See Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir.

10   1990).

11            Also, "a difference of opinion between a prisoner-patient and prison medical

12   authorities regarding treatment does not give rise to a § 1983 claim." Franklin v. Oregon, 662

13   F.2d 1337, 1344 (9th Cir. 1981) (internal citation omitted).  To prevail, plaintiff "must show that

14   the course of treatment the doctors chose was medically unacceptable under the circumstances ...

15   and ... that they chose this course in conscious disregard of an excessive risk to plaintiff's health."

16   Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1986) (internal citations omitted).  A prisoner's

17   mere disagreement with diagnosis or treatment does not support a claim of deliberate

18   indifference. Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir.1989).

19            Here, the court assumes for screening purposes that plaintiff's keloids constitute a

20   serious medical need. See Revels v. Meyers, 2009 WL 3122514, *8 (C.D. Cal. Sept. 25, 2009)

21   (triable issue of fact as to whether plaintiff's keloids constituted a serious medical need); Brock

22   v. Wright, 315 F.3d 158, 163 (2d Cir.2003) (triable issue of fact as to whether painful facial

23   keloid constituted a serious medical need); Harris v. Winslow, 2006 WL 1096011, *4 (N.D. Cal.

24   Apr. 25, 2006) (triable issue of fact as to whether keloid on scalp was a serious medical need

25   when plaintiff complained that it was itchy and painful and caused him to lose sleep).  Thus the

26   question is whether plaintiff has alleged deliberate indifference on the part of one or more

7

1    defendants.

2              Clearly plaintiff has received some measure of care for his keloids while at CSP-

3    Sac, including multiple surgeries and follow-up appointments with an outside dermatologist.

4    However, plaintiff claims that since 2001, his medically necessary treatment by a dermatologist

5    has been subject to chronic, lengthy delays.  He further claims that medical staff at CSP-

6    Sacramento, while aware of his medical history, the 1994 settlement agreement, and his

7    numerous requests for timely outside treatment, did not adequately address his constant pain or

8    the worsening of his condition.  Drawing all reasonable inferences in plaintiff's favor, the court

9    finds that for screening purposes, plaintiff has stated a claim of deliberate indifference as to

10   defendants Hamkar, Sahota, Ali, Nangalama, and Bal.[4]

11             As to defendant Walker, the court does not find that the attached decisions

12   denying plaintiff's inmate appeals in 2010 give rise to a claim of deliberate indifference, as

13   Walker cited several actions taken by CSP-Sac medical staff to address plaintiff's medical needs

14   during the 2009-2010 timeframe.

15             As to defendant Thor, plaintiff alleges that he sat on the Medical Authorization

16   Review Committee (MARC) which "failed to ensure compliance" with the 1994 settlement

17   agreement.  Attached to the complaint is a Physician Request for Services form dated May 28,

18   2010 and signed by Dr. Nangalama, stating: "Patient with recurrent neck keloids has been seen

19   by UCSF Dermatology for several years [indecipherable] neck surgical repair."  Nangalama

20   requested that plaintiff be scheduled for a routine appointment at USCF.  The request was

21   stamped "MARC denied - Please change to Telemedicine dermatology." (Cmplt. at 67.)  The

22   court finds these allegations and records insufficient to state a medical indifference claim as to

23

24        [4]  The undersigned expresses no opinion as to whether plaintiff's claims based on events
     prior to a certain date may be barred by the statute of limitations.  See Watson v. Sisto, No. CIV S-
25   07-1871 LKK KJN P, Order and Findings and Recommendations dated Feb. 14, 2011, adopted by
     district court on March 30, 2011 (applying continuing violations doctrine to Eighth Amendment
26   deliberate indifference claims).

1   Dr. Thor.

2          Plaintiff will be given 30 days from the date of service of this order to amend his

3   complaint to cure any deficiencies outlined above.  Plaintiff is not required to file an amended

4   complaint, but failure to do so will be construed as plaintiff's consent to dismiss the above-

5   mentioned defendants with prejudice.  Upon filing an amended complaint or expiration of the

6   time allowed therefor, the court will make further orders for service of process upon some or all

7   of the defendants.

8          If plaintiff chooses to amend the complaint, plaintiff must demonstrate how the

9   conditions complained of have resulted in a deprivation of plaintiff's constitutional rights.  See

10  Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980).  Also, the complaint must allege in specific terms

11  how each named defendant is involved.  There can be no liability under 42 U.S.C. § 1983 unless

12  there is some affirmative link or connection between a defendant's actions and the claimed

13  deprivation.  Rizzo v. Goode, 423 U.S. 362 (1976); May v. Enomoto, 633 F.2d 164, 167 (9th Cir.

14  1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).  Furthermore, vague and conclusory

15  allegations of official participation in civil rights violations are not sufficient.  See Ivey v. Board

16  of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

17         In addition, plaintiff is informed that the court cannot refer to a prior pleading in

18  order to make plaintiff's amended complaint complete.  Local Rule 220 requires that an amended

19  complaint be complete in itself without reference to any prior pleading.  This is because, as a

20  general rule, an amended complaint supersedes the original complaint.  See Loux v. Rhay, 375

21  F.2d 55, 57 (9th Cir. 1967).  Once plaintiff files an amended complaint, the original pleading no

22  longer serves any function in the case.[5]  Therefore, in an amended complaint, as in an original

23  complaint, each claim and the involvement of each defendant must be sufficiently alleged.

24

25      [5] However, plaintiff may request that attachments to the original complaint be incorporated
    by reference into the Amended Complaint, so he does not have to resubmit them.  The court will
26  grant any such request in light of plaintiff's pro se and incarcerated status.

1    Furthermore, any amended complaint shall not include allegations unrelated to the

2 claims that are the subject of this action.

3    In accordance with the above, IT IS HEREBY ORDERED that:

4    1. Plaintiff's claims against defendants Walker and Thor are dismissed with leave

5 to amend.

6    2. Plaintiff is granted 30 days from the date of service of this order to amend his

7 complaint to cure the deficiencies outlined in this order.  Plaintiff is not required to file an

8 amended complaint, but failure to do so will be construed as plaintiff's consent to the dismissal

9 of the above-mentioned defendants and causes of action;

10    3.  If plaintiff elects to amend, any amended complaint shall bear the docket

11 number assigned to this case, and shall be labeled "Amended Complaint."

12    4.  Upon filing an amended complaint or expiration of the time allowed therefor,

13 the court will make further orders for service of process upon some or all of the defendants.

14   Dated: May 1, 2012

15

16   CAROLYN K. DELANEY
     UNITED STATES MAGISTRATE JUDGE

17

18

19  2
    rush0562.B
20

21

22

23

24

25

26

10