UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SALADIN RUSHDAN,<br><br>        Plaintiff,<br><br>   v.<br><br>HAMKAR, et al.,<br><br>        Defendants. | No.  2:12-cv-0562 MCE CKD P<br><br><br><br>FINDINGS AND RECOMMENDATIONS |

      Plaintiff, a state prisoner proceeding pro se, has filed a civil rights action pursuant to 42 U.S.C. § 1983.  This action proceeds on the complaint filed March 2, 2012 (ECF No. 1 ("Compl.")), which was served on five named defendants (ECF No. 7).  Plaintiff alleges that, while he was incarcerated at California State Prison-Sacramento ("CSP-Sac") and suffering from the skin condition keloids, the physicians named as defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment and negligent under state law.

      Before the court is defendants' October 19, 2012 motion to dismiss, arguing that (1) plaintiff fails to state a claim concerning defendants' alleged failure to provide pain medication; (2) plaintiff fails to state a claim against defendants Bal and Sahota; (3) plaintiff's state law claims should be dismissed for failure to comply with the Government Claims Act; (4) plaintiff's request for injunctive relief is moot; and (5) plaintiff should be sanctioned with dismissal under Rule 41(b) for lying about his prior litigation history.  (ECF No. 19-1.)  Plaintiff filed an

1

opposition (ECF No. 26); defendants filed a reply (ECF No. 28); and plaintiff was permitted to file a sur-reply (ECF No. 40).  For the reasons set forth below, the undersigned will recommend that defendants' motion to dismiss be granted in part and denied in part.

I.  Failure to State a Claim – Bal and Sahota

A. Allegations

In its May 1, 2012 order, the court found that for screening purposes the complaint stated claims against the following defendants for violating plaintiff's Eighth Amendment protection against deliberate indifference: Dr. Sahota (Chief Physician and Surgeon at CSP-Sac); Dr. Bal (Chief Medical Officer at CSP-Sac); Dr. Hamkar (a physician at CSP-Sac); and Dr. Ali and Dr. Nangalama (plaintiff's primary care physicians at CSP-Sac).  (ECF No. 6.)

The court first addresses defendants' argument that plaintiff fails to state a claim against defendants Bal and Sahota under Federal Rule of Civil Procedure 12(b)(6).  The following allegations are relevant:

Plaintiff was transferred from the California Medical Facility (CMF) to CSP-Sac in 2001.  (Compl. at ¶ 1.)  Plaintiff had been diagnosed with keloids after an operation in 1977 at San Quentin State Prison.  (Id. at ¶ 2.)  In 1994, plaintiff and the director of CDCR had entered into a settlement agreement providing that plaintiff would receive medical care for his keloids from an outside dermatologist, Dr. Grekin, in Grekin's office or associated facility in San Francisco, on dates and times specified by Dr. Grekin.  (Id. at 40.[1])  It further provided that Dr. Grekin would prescribe medical care for plaintiff to be rendered by correctional staff at CMF.  (Id. at 40-41.)  The agreement provided that the Chief Medical Officer at CMF would oversee Dr. Grekin's prescribed medical care for plaintiff and that CDCR would fully comply with Dr. Grekin's medical orders for plaintiff.  (Id., Ex. B at 41.)[2]

During the relevant period after plaintiff's transfer in 2001, Dr. Sahota was the Chief Physician and Surgeon at CSP-Sac.

---

[1]  Page citations are to page numbers assigned by the court's docketing system.

[2]  As noted in the screening order, none of the parties to the 1994 agreement are defendants in this action.  (ECF No. 6 at 4.)

2

> By way of position, (602) appeals and meetings, defendant Sahota was aware of plaintiff's serious medical needs and the prescribed treatment necessary to combat Keloid complications. Defendant Sahota, in a decision making position failed to ensure treatment was available in a continuous timely manner that was medically acceptable for his serious condition. Such a failure put plaintiff at a substantial risk of further harm and constitute[d] act of deliberate indifference to plaintiff's well-documented serious medical needs.

(Id. at ¶19.) Similarly, plaintiff alleges: "Due to awareness, title, position and 602 appeals, Defendant Sahota's non-actions were a breach of duty, causing a relapse in Plaintiff's Keloid condition along with the additional pain and suffering plaintiff endured due to 'no pain-medication' upon returning from surgery." (Id. at ¶ 50.) In administrative records attached to the complaint, defendant Dr. Ali notes that on June 17, 2010, he discussed plaintiff's care for keloids with Dr. Sahota. (Id., Ex. A at 33.)

Defendant Bal was Chief Medical Officer while plaintiff was at CSP-Sac,

> and was responsible for ensuring inmates received necessary prescribed care. Defendant Bal was informed by 602s and meetings that plaintiff was not receiving his prescribed treatment for Keloid complications in a timely manner. Defendant Bal[] was made aware that plaintiff's condition was exacerbating and causing pain and suffering. Defendant Bal[] was aware of the specific and details agreed upon treatment plan to be done continuously by Dr. Grekin. The continuous and timely Keloid treatment /surgery was delayed/prolonged and interfered with, causing plaintiff's condition to get worse during the long – no treatment – intervals. The denial of treatment plain . . . constitut[ed] an act of deliberate indifference to plaintiff's well-documented medical needs.

(Id. at ¶ 22; see also id. at ¶ 53.) In an administrative record attached to the complaint, Dr. Bal on August 4, 2009 denied an inmate appeal by plaintiff at the Second Level of Review, finding that that plaintiff had timely received his pain medication following surgery in June 2009. (Id., Ex. D at 59-60.)

Plaintiff further alleges that "[a]ll mentioned defendants . . . were aware that Dr. Grekin had been approved to treat plaintiff and ha[d] control over treatment, over-all plan, consisting of continuous Keloid treatment for complications." (Id. at ¶ 27.) All defendants were "aware that Dr. Grekin had ordered plaintiff returned in 6-8 week intervals – continuously rescheduled – to

/////

3

1  effectively combat a progressive keloid condition."³ (Id. at ¶ 44.)

2  As recounted in the screening order, plaintiff alleges that after his 2001 transfer to CSP-Sac, he was not returned to Dr. Grekin every six to eight weeks. Rather, his visits to Dr. Grekin were delayed by several months and up to five years. (Id. at ¶¶10-11.) In a March 2004 inmate grievance attached to the complaint, plaintiff claimed that, despite submitting numerous requests for treatment, he had been at CSP-Sac "for two and a half (2 ½) years without medical treatment resuming" and was losing sleep and unable to work, exercise, or eat without pain. (Id., Ex. G at 76.) Plaintiff alleges that between 2005 and 2010 he "[was] constantly having to beg & demand that medical staff provide the necessary timely treatment/surgery as Dr. Grekin ordered, which CDC medical staff did not do in a manner to reduce a relapse of condition." (Id. at ¶ 13.) As a result, his condition has "visibly spread on infected areas (shoulder) and developed into an assortment of other painful and complex symptoms," including "hundreds of ingrown hairs, folliculitis," lumps, and scarring in the face and jaw area which creates difficulty eating. This worsening of his condition has led to "years of daily pain and discomfort." (Id. at ¶¶ 14-16.)

B. Legal Standard

In order to survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), a complaint must contain more than a "formulaic recitation of the elements of a cause of action"; it must contain factual allegations sufficient to "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). "The pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." Id., quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004). "[A] complaint must contain sufficient factual matter, accepted as true, to

---

³ The 1994 settlement agreement simply provided that Dr. Grekin would treat plaintiff "on the dates and times specified by" him. As to plaintiff's allegation that he was ordered to be seen by Dr. Grekin every six to eight weeks, the court assumes for purposes of the motion that plaintiff is referring to a subsequent order or orders by Dr. Grekin. A 1992 letter by Dr. Grekin, attached to the complaint and outlining plaintiff's course of treatment, notes that "persistence and consistency in therapy is extremely important. Sporadic intermittent treatments will always meet with failure. I cannot overstate the need for patient, persistent uniform therapy in order to gain the best possible results." (Compl., Ex. C at 48.)

'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In considering a motion to dismiss, the court must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the party opposing the motion, and resolve all doubts in the pleader's favor. Jenkins v. McKeithen, 395 U.S. 411, 421, reh'g denied, 396 U.S. 869 (1969). The court will "'presume that general allegations embrace those specific facts that are necessary to support the claim.'" National Organization for Women, Inc. v. Scheidler, 510 U.S. 249, 256 (1994), quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). Moreover, pro se pleadings are held to a less stringent standard than those drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520 (1972).

The court may consider facts established by exhibits attached to the complaint. Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987). The court may also consider facts which may be judicially noticed, Mullis v. United States Bankruptcy Ct., 828 F.2d 1385, 1388 (9th Cir. 1987); and matters of public record, including pleadings, orders, and other papers filed with the court, Mack v. South Bay Beer Distributors, 798 F.2d 1279, 1282 (9th Cir. 1986). The court need not accept legal conclusions "cast in the form of factual allegations." Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).

C. Analysis

In their motion, defendants argue that plaintiff has failed to allege "deliberate indifference" by Dr. Sahota and Dr. Bal sufficient to state an Eighth Amendment claim. Defendants also argue that plaintiff has failed to allege the personal involvement of Dr. Sahota and Dr. Bal in any constitutional violation so as to subject them to supervisory liability under § 1983. The court therefore reviews the allegations against these defendants in light of the following legal standards:

////

1. Medical Indifference

Under §1983, an individual may sue "[e]very person, who, under color of [law] subjects" him "to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." An individual may be liable for deprivation of constitutional rights "within the meaning of section 1983 'if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" Preschooler II v. Clark County Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007).

In order to state an Eighth Amendment claim for inadequate medical care, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). Plaintiff must plead sufficient facts to permit the court to infer that (1) plaintiff had a "serious medical need," and that (2) individual defendants were "deliberately indifferent" to that need. Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). A prisoner can satisfy the "serious medical need" prong by demonstrating that "failure to treat [his] condition could result in further significant injury or the unnecessary and wonton infliction of pain." Id. (internal citations and quotations omitted).[4]

As to the "deliberate indifference" prong, individual defendants are not liable under the Eighth Amendment for their part in denying necessary medical care unless they knew "of and disregard[ed] an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837, (1994); Gibson v. County of Washoe, Nev., 290 F.3d 1175, 1187-88 (9th Cir. 2002). Deliberate indifference contains both an objective and subjective component: "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference." Farmer, 511 U.S. at 837. "If a person should have been aware of the risk, but was not," then the standard of deliberate indifference is not satisfied "no matter how severe the risk." Gibson, 290 F.3d at 1188 (citing Jeffers v. Gomez, 267 F.3d 895, 914 (9th Cir. 2001)). Plaintiffs "need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or

---

[4] Defendants do not dispute for purposes of their Rule 12(b)(6) motion that plaintiff had a serious medical need.

failed to act despite his knowledge of a substantial risk of serious harm." Farmer, 511 U.S. at 842.

"The indifference to medical needs must be substantial; a constitutional violation is not established by negligence or 'an inadvertent failure to provide adequate medical care.'" Anderson v. County of Kern, 45 F.3d 1310, 1316 (9th Cir. 1995) (quoting Estelle, 429 U.S. at 105-06). Generally, defendants are "deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment." Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002); Lolli v. County of Orange, 351 F.3d 410, 419 (9th Cir. 2003).

2. Supervisory Liability

Government officials acting as supervisors may be liable pursuant to Section 1983 under certain circumstances. "[W]hen a supervisor is found liable based on deliberate indifference, the supervisor is being held liable for his or her own culpable action or inaction, not held vicariously liable for the culpable action or inaction of his or her subordinate." Starr v. Baca, 652 F.3d 1202, 1207 (9th Cir. 2011).

A defendant may be held liable as a supervisor under Section 1983 if there exists "either (1) his or her personal involvement in the constitutional deprivation; or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989); Starr, 652 F.3d at 1207. The requisite causal connection between a supervisor's wrongful conduct and the violation of the prisoner's Constitutional rights can be established in a number of ways. The plaintiff may show that the supervisor set in motion a series of acts by others, or knowingly refused to terminate a series of acts by others, which the supervisor knew or reasonably should have known would cause others to inflict a constitutional injury. Dubner v. City & County of S.F., 266 F.3d 959, 968 (9th Cir. 2001); Larez v. City of L.A., 946 F.2d 630, 646 (9th Cir. 1991).

Also, a supervisor's own culpable action or inaction in the training, supervision, or control of his subordinates may establish supervisory liability. Starr, 652 F.3d at 1208; Larez, 946 F.2d at 646. Finally, a supervisor's acquiescence in the alleged constitutional deprivation, or conduct showing deliberate indifference toward the possibility that efficient performance of the task may

violate the rights of others, may establish the requisite causal connection. <u>Starr</u>, 652 F.3d at 1208; <u>Menotti v. City of Seattle</u>, 409 F.3d 1113, 1149 (9th Cir. 2005).

3. <u>Discussion</u>

Here, plaintiff has alleged that Dr. Sahota and Dr. Bal were aware that plaintiff was not receiving timely or adequate treatment for his keloids, but failed to ensure that plaintiff received adequate treatment. Plaintiff contends that these defendants knew about his lack of treatment through "position," "title," "602 appeals," and "meetings." He alleges that Dr. Bal was aware of "the specific and detail[ed] agreed upon treatment plan to be done continuously by Dr. Grekin," and that Dr. Sahota also knew of plaintiff's "prescribed treatment."

However, plaintiff has not made specific, plausible allegations that these supervisory defendants were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and . . . also dr[e]w that inference." <u>See</u> <u>Farmer</u>, 511 U.S. at 837. Two recent Ninth Circuit cases on supervisory liability are instructive:

In <u>Starr</u>, <u>supra</u>, 652 F. 3d 1202, the plaintiff, an inmate at the Los Angeles County Jail, was physically attacked by inmates and deputy sheriffs. He filed a § 1983 action against Los Angeles County Sheriff Leroy Baca as well as the deputies involved in the attack, arguing that his conditions of his confinement violated the Eighth and Fourteenth Amendments. The plaintiff contended that even though Sheriff Baca was not personally involved in the attack, Sheriff Baca was nonetheless "liable in his individual capacity because he knew or should have known about the dangers in the Los Angeles County Jail, and that he was deliberately indifferent to those dangers." <u>Id.</u> at 1204-05.

The Ninth Circuit concluded that plaintiff stated a deliberate indifference claim against Sheriff Baca. <u>Id.</u> at 1208. The court reasoned that the complaint made

> detailed factual allegations that go well beyond reciting the elements of a claim of deliberate indifference. These allegations are neither 'bald' nor 'conclusory,' and hence are entitled to the presumption of truth. [<u>Ashcroft v. Iqbal</u>, 129 S. Ct. [1937] at 1951[, (2009)]. Starr specifically alleges numerous incidents in which inmates in Los Angeles County jails have been killed or injured because of the culpable actions of the subordinates of Sheriff Baca. The complaint specifically alleges that Sheriff Baca was given notice of all of these incidents. It specifically alleges, in

> addition, that Sheriff Baca was given notice, in several reports, of systematic problems in the county jails under his supervision that have resulted in these deaths and injuries. Finally, it alleges that Sheriff Baca did not take action to protect inmates under his care despite the dangers, created by the actions of his subordinates, of which he had been made aware.
>
> . . .
>
> Second, the factual allegations in Starr's complaint plausibly suggest that Sheriff Baca acquiesced in the unconstitutional conduct of his subordinates, and was thereby deliberately indifferent to the danger posed to Starr.

Id. at 1216.

In contrast, in Hydrick v. Hunter, 669 F.3d 937, 941 (9th Cir. 2012), the Ninth Circuit determined that plaintiffs, a class of civilly committed persons at Atascadero State Hospital, failed to state a § 1983 claim against hospital administrators and other supervisory defendants. Unlike in Starr, the Ninth Circuit reasoned, "[p]laintiff's complaint is based on conclusory allegations and generalities, without any allegation of the specific wrong-doing by each Defendant. . . . [T]here is no allegation of . . . a specific event or events instigated by the Defendants that led to [the] purportedly unconstitutional [conduct]." Id. at 942. Nor were there "specific allegations regarding each Defendant's purported knowledge" of the allegedly unconstitutional conduct. Id. Rather, plaintiff's claims against these defendants were "devoid of specifics." Id. The Ninth Circuit continued:

> The absence of specifics is significant because, to establish individual liability under 42 U.S.C. § 1983, 'a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.' Iqbal, 129 S. Ct. at 1948. Even under a 'deliberate indifference' theory of individual liability, the Plaintiffs must still allege sufficient facts to plausibly establish the defendant's 'knowledge of' and 'acquiescence in' the unconstitutional conduct of his subordinates. Starr, 652 F.3d at 1206–07. In short, Plaintiffs' 'bald' and 'conclusory' allegations are insufficient to establish individual liability under 42 U.S.C. § 1983. See Iqbal, 129 S. Ct. at 1950–53; cf. Starr, 652 F.3d at 1216–17.

Id.

In the instant case, the undersigned concludes that plaintiff's allegations as to Dr. Sahota and Dr. Bal are closer to the conclusory allegations in Hydrick than the detailed and specific

9

allegations in Starr. As plaintiff has not pled specific facts to plausibly establish these defendants' knowledge of or acquiescence in the alleged deliberate indifference to plaintiff's serious medical need, defendants' Rule 12(b)(6) motion should be granted as to Dr. Sahota and Dr. Bal.

II. Failure to State a Claim – Pain Medication

Defendants next argue that plaintiff has failed to state a claim based on alleged delays in receiving pain medication. In fact, plaintiff makes two types of allegations regarding pain: first, that his "inadequate care has subjected him to years of daily pain and discomfort" due to the painful nature of keloids (e.g., Compl. at ¶ 16), and second, that he was not provided with pain medication after undergoing surgery for keloids. (Compl. at ¶¶ 16, 25, 42.) Defendants' argument concerns the second allegations.

Plaintiff has attached to the complaint a 602 inmate appeal, Log No. SAC-10-09-11305, in which he stated that on June 3, 2009, after he returned from keloids surgery, the triage nurse did not provide his ordered pain medication. (Compl., Ex. D at 54-61.) Plaintiff asserted that this was the fifth time this had happened. (Id. at 56; see also id. at ¶ 42 (alleging that plaintiff was not given his prescribed pain medication "after each treatment/surgery").) On June 22, 2009, the first level reviewer found that plaintiff's medication record reflected that he "received Acetaminophen with Codeine #3 for pain from June 4, 2009 to June 10, 2009." (Id. at 57.) This 602 appeal was subsequently denied at the second and third levels of review. (Id. at 54-61.)

In sum, plaintiff has specifically alleged only a one-time delay in pain medication by a non-defendant nurse. Even if defendants were allegedly responsible for this delay, it does not rise to the level of an Eighth Amendment violation. See Wood v. Housewright, 900 F. 2d 1332, 1335 (9th Cir. 1990) (alleged delay of several days in receiving pain medication did not amount to constitutional violation). Nor is plaintiff's general allegation that he was denied post-surgical pain medication multiple times sufficient to state a claim against any named defendant. Insofar as plaintiff claims that defendants unconstitutionally failed to provide post-surgical pain medication, those claims should be dismissed.

/////

III. State Law Claims

In addition to his Eighth Amendment claims, plaintiff alleges that defendants were negligent under state law. (Compl. at ¶¶ 44-48.) Defendants assert that plaintiff's state law claims should be dismissed because plaintiff has not complied with the California Tort Claims Act ('CTCA'). Gov. Code § 900 et seq.

The CTCA applies to claims brought against state employees "for injury resulting from an act or omission in the scope of his employment as a public employee," Cal. Gov't Code § 950.2, and requires that tort claims against state employees be presented to the California Victim Compensation and Government Claims Board ("Board"), formerly known as the State Board of Control, no more than six months after the cause of action accrues, Cal. Gov't Code §§ 910, 911.2. Once a claim is rejected and the claimant is permitted to file a lawsuit, the claimant has six months after the date such notice is personally delivered or deposited in the mail within which to file a law suit. Cal. Gov't Code §§ 945.5, 945.6(a)(1).

Here, the Board received plaintiff's claim number G593206 on November 18, 2010. (ECF No. 20, Ex G at 65.) In it, plaintiff alleged that in December 2009, when he returned from keloids surgery, Dr. Hamkar negligently failed to place Dr. Grekin's dressing change instructions into plaintiff's medical file. (Id. at 70.) On November 22, 2010, the Board informed plaintiff that the claim was not presented within six months of the alleged incidents as required. (Id. at 66.) On March 25, 2011, the Board rejected plaintiff's claim and informed him that he had only six months from the date of the notice to file a court action on the claim. (Id. at 64.)

Plaintiff filed the instant action on March 2, 2012, well after the six-month deadline to file his negligence claim had expired. The Ninth Circuit has held that "failure to comply with state-imposed procedural conditions to sue the state bars the maintenance of a cause of action based upon these pendent state claims." Ortega v. O'Connor, 764 F.2d 703, 707 (9th Cir. 1985), rev'd on other grounds, 480 U.S. 709 (1987), citing Willis v. Reddin, 418 F.2d 702, 704 (9th Cir. 1969). Thus defendants' motion to dismiss should be granted as to plaintiff's state law claims.

/////

/////

IV. Injunctive Relief

Defendants, who are all physicians at CSP-Sac, contend that plaintiff's requested injunctive relief is moot because he is no longer housed at CSP-Sac. The docket reflects that in July 2012, plaintiff was transferred to CSP-Solano. (ECF No. 12.)

Plaintiff seeks the following injunctive relief from defendants:

> A: For the "Compromise and Release" treatment plan, signed by the Director of the California Department of Corrections to be followed by Dr. Grekin (specialist) to have authority over the duration of the prescribed treatment/surgery care plan.
>
> B. For medical staff at CDC & R to provide the arrangement of timely/continuously scheduled Keloid treatment/surgery, so Dr. Grekin can effectively treat plaintiff's condition.
>
> C: For plaintiff to receive prescribed pain medication promptly after returning from each Keloid treatment/surgery.

(Compl. at ¶ 23.)

Generally, when an inmate seeks injunctive or declaratory relief concerning the prison where he is incarcerated, his claims for such relief become moot when he is no longer subjected to those conditions. Nelson v. Heiss, 271 F.3d 891, 897 (9th Cir. 2001); Dilley v. Gunn, 64 F.3d 1365, 1368 (9th Cir.1995); Johnson v. Moore, 948 F.2d 517, 519 (9th Cir.1991). Because none of the defendants are in a position to effect the requested relief now that plaintiff is house at CSP-Solano, his request for injunctive relief is moot.

V. Prior Litigation History

Lastly, defendants assert that the complaint should be dismissed pursuant to Rules 11 and 41(b) of the Federal Rules of Civil Procedure because plaintiff misrepresented his prior litigation history. In the complaint, plaintiff stated that he had only filed one prior lawsuit, Rushdan v. Alameda, et al., No. 2:02-cv-1468 (E.D. Cal), which was "dismissed and settled." (Compl. at 1.) However, court records show that in Rushdan v. Alameda, the district court dismissed the action for failure to exhaust administrative remedies.[5]

/////

---

[5] A court may take judicial notice of court records. See MGIC Indem. Co. v. Weisman, 802 F.2d 500, 595 (9th Cir. 1986); United States v. Wilson, 631 F.2d 118, 119 (9th Cir. 1980).

12

1        Plaintiff also failed to disclose six prior civil actions that he filed in the Eastern and
2 Northern Districts of California between 2001 and 2006, five of which were dismissed.  (ECF No.
3 20, Exs. A-E.)  A sixth action, Rushdan v. Weden, et al., No. 3:90-cv-2985 (N.D. Cal.), was
4 dismissed pursuant to the settlement agreement providing for Dr. Grekin's ongoing treatment of
5 plaintiff's keloids, described above.  (ECF No. 20, Ex. F.)  In his opposition to defendants'
6 motion, plaintiff asserts that he inadvertently failed to list these prior lawsuits in the complaint,
7 but was not intentionally dishonest.  (ECF No. 40 at 8-9.)
8        Rule 11 forbids lying in pleadings, motions, and other papers filed with the court.  As it
9 "explicitly applies to parties not represented by attorneys," pro se litigants are not exempt from its
10 requirements.  Warren v. Guelker, 29 F.3d 1386, 1390 (9th Cir. 1994).  Where a pro se prisoner
11 fails to indicate in a civil action that he has filed numerous other similar suits, dismissal may be
12 an appropriate sanction.  See, e.g., Cranford v. Ahlin, 2012 WL 3912762 at *6 (E.D. Cal. Sept. 7,
13 2012) (dismissing under Rule 11 duplicative lawsuit by civil detainee who failed to disclose
14 previous lawsuits).
15        Here, while plaintiff failed to disclose several previous lawsuits, the instant action is not
16 duplicative.  In plaintiff's most recent prior action, Rushdan v. Perbula, No. 2:06-cv-729 GEB
17 GGH P (E.D. Cal.), the district court on August 9, 2010 dismissed plaintiff's complaint[6] claiming
18 breach of the 1992 settlement agreement.  (Id., ECF No. 73.)  However, most of plaintiff's
19 allegations in Perbula concerned his time at CMF, prior to his transfer to CSP-Sac (see id., ECF
20 No. 71 at 8), and none of the defendants in Perbula are named in the instant action.
21        As the instant action is not duplicative, the undersigned will not recommend Rule 11
22 dismissal for plaintiff's (allegedly inadvertent) misrepresentation of his litigation history.
23 However, plaintiff is advised that any future misrepresentation to the court will be subject to
24 sanction, including possible dismissal of this action.
25 /////
26

---

27 [6] The district court dismissed plaintiff's claims for untimeliness, failure to exhaust administrative remedies, failure to state a claim, and failure to demonstrate compliance with the California Tort
28 Claims act, respectively.  (Id., ECF No. 71.)

13

VI. Conclusion

In sum, the undersigned will recommend that defendants' Rule 12(b)(6) motion to dismiss be granted as to defendants Sahota and Bal and as to claims that plaintiff was unconstitutionally denied pain medication following surgery. The court will also recommend that plaintiff's claims for injunctive relief from defendants at CSP-Sac be denied as moot, and that plaintiff's state law claims be dismissed for failure to comply with the CTCA.

However, the court will not recommend that plaintiff's remaining claims be dismissed as a sanction for misrepresenting his litigation history. Rather, this action should proceed on those claims against remaining defendants Dr. Ali, Dr. Hamkar, and Dr. Nangalama.

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Defendants' October 19, 2012 motion to dismiss (ECF No. 19) be granted to the following extent:

   a. Defendants Sahota and Bal are dismissed from this action;

   b. Plaintiff's claims that defendants denied him post-surgical pain medication in violation of the Eighth Amendment are dismissed;

   c. Plaintiff's state law claims are dismissed;

   d. Plaintiff's request for injunctive relief is moot; and

2. Defendants Hamkar, Ali, and Nangalama be directed to file an answer to the remaining claims in this action.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

/////

Dated: June 6, 2013

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2
rush0562.mtd