UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT STANLEY WOODS, aka SALADIN RUSHDAN,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>HAMKAR, et al.,<br><br>　　　　　Defendants. | No. 2:12-cv-0562 MCE CKD P<br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. In the operative First Amended Complaint (ECF No. 65 ("FAC")), plaintiff claims that defendants Hamkar, Ali, and Nangalama were deliberately indifferent to his serious medical needs under the Eighth Amendment and that defendants Beard, Toche, Tharratt, and Kelso breached a 1994 settlement agreement providing for plaintiff's medical care. (See ECF No. 71.)

Before the court are defendants' motions to dismiss the FAC, one brought by defendant Kelso (ECF No. 85) and the other by the remaining six defendants (ECF No. 82). The motions are fully briefed. Having carefully considered the record and the applicable law, the undersigned will recommend that plaintiff's Eighth Amendment claims go forward and his contract claims be dismissed.

1

I. <u>Factual and Procedural History</u>

In the FAC, plaintiff alleges as follows:

In 1977, plaintiff was diagnosed with keloids, a condition which caused disfiguring lesions on his neck and chest area. In 1994, a treatment plan for plaintiff's keloids was established pursuant to a settlement agreement in a federal court action. The 1994 settlement provided that Dr. Roy Grekin at the University of California-San Francisco, or someone designated by him, would administer plaintiff's ongoing treatment and any needed surgery. (FAC, Ex. B at 37-43.) CDCR's[1] role was to deliver plaintiff to Dr. Grekin "on the dates and times specified by Dr. Grekin" and to comply with "any and all prescriptions and/or orders for medical care" for plaintiff by Dr. Grekin. (<u>Id.</u> at 38-39.)

In 2001, plaintiff was transferred to California State Prison-Sacramento, where medical staff were responsible for ensuring that plaintiff received treatment and medication for keloids pursuant to the 1994 agreement. Defendants Hamkar, Ali, and Nangalama were plaintiff's primary care providers at CSP-Sac. "From 2001 to present day, plaintiff's treatment plan has been stopped and prolonged by delays of 6 months to 5 years in between visits to Dr. Grekin for treatment." (<u>Id.</u>, ¶ 22.) This has "effectively undermine[d] the treatment plan under the 1994 Settlement." (<u>Id.</u>, ¶ 23.)

Between 2005 and 2010, plaintiff filed multiple Health Care Services Requests asking that medical staff provide the treatments ordered by Dr. Grekin. (FAC, Ex. E at 60-65.) In June 2010, plaintiff filed an inmate appeal documenting the violations of the 1994 settlement. (FAC, Ex. A at 23-35.) A Director's Level decision on the appeal was issued in October 2010. (<u>Id.</u>) In December 2009, plaintiff underwent surgery for his keloids at UCSF. In August 2010, he was transported to USCF for examination and had another surgery for his keloids. (<u>See id.</u> at 24-26.)

Plaintiff commenced this action on March 2, 2012. (ECF No. 1.) He claims that Hamkar, Ali, and Nangalama were deliberately indifferent to his serious medical needs under the Eighth Amendment. He also claims that CDCR officials Beard, Toche, Tharratt, and Kelso are in

---

[1] California Department of Corrections and Rehabilitation.

2

breach of contract by violating the 1994 settlement. Plaintiff asserts that he put CDCR on notice of the breach of contract with his June 2010 administrative grievance. (FAC, ¶ 82.) Plaintiff seeks injunctive relief requiring defendants to meet their obligations under the 1994 settlement. (Id., ¶ 86.) He also seeks compensatory damages. (Id. at 21.)

II. Legal Standard

Actions brought pursuant to 42 U.S.C. § 1983 are governed by the forum state's statute of limitations for personal injury actions. Wilson v. Garcia, 471 U.S. 261, 265 (1985); Jones v. Blanas, 393 F.3d 918, 927 (9th Cir. 2004). In California, a two-year statute of limitations applies. See Cal. Code Civ. P. § 335.1; Jones, 393 F.3d at 927. The federal court also applies the forum state's law regarding tolling, including equitable tolling when not in conflict with federal law. Hardin v. Straub, 490 U.S. 536, 537–39 (1989); Fink v. Shedler, 192 F.3d 911, 914 (9th Cir. 1999), cert. denied, 529 U.S. 1117 (2000). California provides that when a litigant is incarcerated, the applicable limitations period is tolled for two years on grounds of "disability." Cal. Code Civ. P. § 352.1(a). This tolling provision operates to delay the running of the limitations period, effectively extending the two-year personal injury limitations period to four years for inmates. See Carlson v. Blatt, 87 Cal.App.4th 646, 650, (2001) (imprisonment tolls running of limitations period for two years from accrual of cause of action). Accordingly, California inmates have a total of four years from the accrual of a cause of action to file a complaint.

Moreover, the Ninth Circuit has held that prisoners are entitled to equitable tolling of the statute of limitations while completing the mandatory exhaustion process. Brown v. Valoff, 422 F.3d 926, 942–43 (9th Cir. 2005).

Though the limitations period and tolling are governed by state law, federal courts apply federal law when determining when a § 1983 cause of action accrues and the limitation period starts running. Under federal law, a § 1983 action accrues "when the plaintiff knows or has reason to know of the actual injury." Lukovsky v. City and County of San Francisco, 535 F.3d 1044, 1051 (9th Cir. 2008).

////

III. <u>Discussion</u>

A. <u>Eighth Amendment</u>

Defendants argue that plaintiff's deliberate indifference claims against Hamkar, Ali, and Nangalama accrued in 2001, when he first knew of the alleged injury – i.e., that his doctors at CSP-Sac were not abiding by the 1994 settlement agreement. Thus the limitations period expired on December 31, 2005 at the latest. For this reason, plaintiff's exhaustion of his administrative remedies in 2010 failed to toll the limitations period.

Plaintiff counters that his Eighth Amendment claims rest on allegations that he was injured due to a series of "actions and inactions" by his doctors at CSP-Sac (FAC, ¶ 27):

> 27) Due to Defendants actions and inaction, Plaintiff's Keloid Condition has become exacerbated, visibly spread on infected areas (shoulder) and developed into an assortment of other painful and complex symptoms, such as: hundreds of ingrown hairs, folliculitis, which is more painful when an African American has such a condition, lumps which linger unless regularly treated. The scaring [sic] on the Plaintiff's face and jaw area of mouth creates difficulty in eating. Scaring [sic] on the chest and shoulder area is painful when Plaintiff breathes and expands his chest. All of these factors place Plaintiff in a condition of daily pain and add to the mental trauma of having a treatment plan which is deliberately delayed and denied.
>
> 29) Plaintiff's original scar on his neck and chest area has consistently spread and grown due to the Defendants failure to ensure timely treatment while under their care. (See attached Exhibit F.)
>
> 29) Pain has always been a factor associated with a Keloid Condition. Plaintiff's inadequate care has subjected him to years of daily pain and discomfort.

(FAC, ¶¶ 27-29.)

Plaintiff argues that he has alleged a "continuing violation" by the medical defendants, consisting of "the interruptions, stoppages, and prolonging of the medical treatment for his condition that he was entitled to under the 1994 settlement" (ECF No. 91 at 14), and that the "resulting cumulative effect" of his above-described injuries has been years of daily pain and trauma. (<u>Id.</u>) Thus, plaintiff argues, the 2001 accrual date does not apply.

////

////

4

In a recent order, another Magistrate Judge in this district explained the continuing violation doctrine in the prison civil rights context[2]:

> The continuing violation doctrine is an equitable doctrine designed "to prevent a defendant from using its earlier illegal conduct to avoid liability for later illegal conduct of the same sort." O'Loghlin v. County of Orange, 229 F.3d 871, 875 (9th Cir. 2000). To establish a continuing violation, a plaintiff must show "a series of related acts against a single individual ... that ... 'are related closely enough to constitute a continuing violation.'" Green v. Los Angeles County Superintendent of Schools, 883 F.2d 1472, 1480 (9th Cir. 1989) (quoting Bruno v. Western Elec. Co., 829 F.2d 957, 961 (10th Cir. 1987)). However, the mere continuing impact from a past violation is not actionable under the continuing violation doctrine. Knox v. Davis, 260 F.3d 1009, 1013 (9th Cir. 2001) (citing Grimes v. City and County of San Francisco, 951 F.2d 236, 238–39 (9th Cir. 1991)).
>
> Although the Ninth Circuit has not applied the continuing violation doctrine to Eighth Amendment deliberate indifference claims, several other circuits have. See Heard v. Sheahan, 253 F.3d 316, 318 (7th Cir. 2001) (finding that continuous violation doctrine applied to defendants' deliberate indifference for the span of time that prison officials were aware of plaintiff's injury and allegedly refused to treat it); Lavellee v. Listi, 611 F.2d 1129, 1132 (5th Cir. 1980) ("[T]he [arrestee's] allegation of a failure to provide needed and requested medical attention constitutes a continuing tort, which does not accrue until the date medical attention is provided."); Neel v. Rehberg, 577 F.2d 262, 263–64 (5th Cir.1978) (per curiam) (finding that where inmate alleged that jail officials failed to provide medical treatment over a three-month period, the continuous violation doctrine applied and the statute of limitations did not begin to run until the end of that period); see also Evans v. County of San Diego, No. 06 CV 0877 JM (RBB), 2008 WL 842459, at *12 (S.D. Cal. Mar. 27, 2008) (applying continuing violation doctrine to prisoner's Eighth Amendment medical treatment claim).

////

---

[2] Gipbsin v. Kernan, No. 2:12-cv-0556 GEB DAD P, 2015 WL 3993073 (E.D. Cal. June 30, 2015) (findings and recommendations adopted by district court on July 28, 2015).

District courts in the Ninth Circuit have consistently recognized the continuing violation doctrine in prisoner civil rights cases. See, e.g., Gipbsin, 2015 WL 3993073 (applying the continuing violation doctrine to prison officials' alleged two-year failure to transfer civilly-committed plaintiff to mental health facility pursuant to court order); Watson v. Sisto, No. 2:07–cv–01871 LKK KJN P, 2011 WL 533716 at *5 (E.D. Cal. Feb.14, 2011) (applying continuing violation doctrine to plaintiff's claim that the prison health system, as administered by doctors and staff, consistently failed to provide adequate medical care for plaintiff's back condition); Evans, 2008 WL 842459 at *12 (applying the continuing violation doctrine to plaintiff's deliberate indifference claim because the claim was not based on the original knee injury but rather on defendants' ongoing failure to treat the injury); see also, e.g., MacGregor v. Dial, No. 2:13–cv–1883 JAM AC P, 2015 WL 1405492 at *9 (E.D. Cal. Mar. 26, 2015) (finding that the continuing violation doctrine did not apply because the plaintiff's allegations were based on discrete acts of deliberate indifference); Navarro v. Herndon, No. 2:09–cv–1878 KJM KJN P, 2011 WL 3741351 at *8 (E.D. Cal. Aug.24, 2011) (finding that continuing violation doctrine did not apply because each mental health diagnosis and placement was discrete with its own consequences), adopted in part and rejected in part on other grounds by 2011 WL 4578534 (E.D. Cal. Sept. 30, 2011).

In their reply, defendants argue that plaintiff's allegations of ongoing harm between 2001 and "the present day" are too conclusory to apply the continuing violation doctrine. Moreover, "[a]ll of the wrongdoing of which Plaintiff complains occurred prior to 2010." (ECF No. 95 at 3.)

Documents attached to the FAC indicate that in June 2009, he underwent surgery by Dr. Grekin. (FAC, Ex. D at 54.) In December 2009, he again had surgery at UCSF for keloids complications. (Id., Ex. A at 26.) In June 2010, he filed a 602 appeal asserting that, after his December 2009 surgery, he did not receive follow-up surgery as instructed. (Id., Ex. B at 26-27.) In August 2010, he was examined at UCSF and had another surgery, with plans to return to UCSF in six to eight weeks for further treatment. (Id. at 24-25.) It is not clear whether this follow up occurred. Plaintiff was seen by Dr. Grekin in July 2011 and October 2011. (Id. at 28-29.)

The undersigned concludes that plaintiff has alleged a continuing violation against the medical defendants between 2001 and 2010.  See Head, 253 F.3d at 319) (cause of action accrues on the last day officials refused to treat inmate's medical condition or on the date he left the jail). The limitations period was tolled during plaintiff's pursuit of administrative remedies in 2010. Because he commenced the instant action in March 2012, his Eighth Amendment claims against the medical defendants are timely.

B.  Breach of Contract

As set forth in the screening order, the court exercises supplemental jurisdiction over plaintiff's state law breach of contract claims against the CDCR defendants.  (ECF No. 71 at 5-7.) Plaintiff seeks specific performance of the 1994 settlement agreement, which provides that plaintiff "may bring an action against the Director to obtain performance of any of the provisions of this agreement." (FAC, Ex. B at 40.)

Defendants contend that plaintiff's contract claims are time-barred and, alternatively, should be dismissed for failing to state a claim for injunctive relief.

1.  Continuous Accrual

Plaintiff's contract claim is governed by California law.  Under state law, a cause of action for breach of contract generally accrues at the time of breach, which starts the four-year limitations period running.  Buschman v. Anesthesia Business Consultants LLC, 42 F. Supp. 3d 1244, 1250 (N.D. Cal. 2014), citing Cal. Code. Civ. Proc. § 337.  In addition, "at common law, a cause of action accrues when it is complete with all of its elements – those elements being wrongdoing, harm, and causation."  Aryeh v. Canon Business Solutions, Inc., 55 Cal. 4th 1185, 1191 (2013) (internal quotations and citations omitted).  Defendants argue that the contract claims accrued in 2001, when plaintiff first became aware of the alleged breach.

Plaintiff contends that his contract claims are subject to the doctrine of continuous accrual as explained by the California Supreme Court.[3]  "[U]nder the theory of continuous accrual, a series of wrongs or injuries may be viewed as each triggering its own limitations period, such that

---

[3] This is distinct from the continuing violation doctrine, described above.  See Aryeh, 55 Cal. 4th at 1192, 1197-98.

7

a suit for relief may be partially time-barred as to older events but timely as to those within the applicable limitations period." Id. "This theory is a response to the inequities that would arise if the expiration of the limitations period following a first breach of duty or instance of misconduct were treated as sufficient to bar suit for any subsequent breach of conduct." Id. at 1198.

> Generally speaking, continuous accrual applies whenever there is a continuing or recurring obligation[.] . . . Because each new breach of such an obligation provides all the elements of a claim — wrongdoing, harm, and causation [citations omitted] —each may be treated as an independently actionable wrong with its own time limit for recovery.
>
> However, unlike the continuing violation doctrine, which renders an entire course of conduct actionable, the theory of continuous accrual supports recovery only for damages arising from those breaches falling within the limitations period.

Id. at 1199.

Here, plaintiff argues, defendants' obligation to provide medical care in accordance with the 1994 settlement "was a continuing one, susceptible to recurring breaches." Id. at 1200. Thus, claims based on alleged breaches of the 1994 settlement within the four years preceding suit are timely. The court agrees with this analysis.[4]

Plaintiff first named defendants Beard, Tharratt, Toche and Kelso[5] in the FAC, filed March 14, 2014. Thus any alleged breaches after March 2010 would be timely under the continuous accrual doctrine.

As noted above, on June 2, 2010, plaintiff filed a 602 medical appeal asserting that CDCR was in violation of the 1994 settlement. (FAC, Ex. B at 26-27.) He cited a history of treatment delays and ongoing failure to follow Dr. Grekin's orders. (Id.) His most recent complaint was that, six months after his December 2009 surgery, he had not been returned to Dr. Grekin for follow-up surgery as instructed. (Id.) Plaintiff's first level appeal was partially granted, and he

---

[4] Given the applicability of California's continuous accrual doctrine, the court finds unpersuasive defendant Kelso's argument that plaintiff's claims are barred by laches.

[5] Plaintiff concedes that defendant Kelso cannot be sued in his individual capacity, only his official capacity. Medical Dev. Int'l. v. Cal. Dept. of Corr. & Rehab., 585 F.3d 1211 (9th Cir. 2009). (ECF No. 91 at 19.) Kelso became the Receiver for the California Prison Medical Health Care System in 2010. (ECF No. 85-1 at 2.)

was examined by defendant Dr. Ali on July 14, 2010. (Id. at 24.) On August 11, 2010, he underwent surgery at USCF and was to return in six to eight weeks for further treatment.[6] (Id.) As set forth above, he was returned to Dr. Grekin at least two times in 2011.

Construing the complaint in his favor, plaintiff asserts a breach of contract claim based on prison officials' failure to follow Dr. Grekin's December 2009 orders in 2010, up to and until plaintiff's follow-up surgery in August of that year. Applying the continuous accrual doctrine, the undersigned concludes that any claims based on this alleged breach are timely.

In contrast, plaintiff's allegations of post-2010 breach are conclusory and find little support in the record.

2. Risk of Impending Harm

The CDCR defendants point out that the only remedy plaintiff seeks against them is injunctive relief to enforce his 1994 settlement agreement with CDCR.[7] (See ECF No. 71 at 5-7.) They argue that because the FAC, taken in its entirety, does not allege *ongoing* breach of the agreement, plaintiff cannot show he is at risk of impending harm warranting an injunction. See City of Los Angeles v. Lyons, 461 U.S. 95, 102 (1983) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief.")

Defendants argue that plaintiff has alleged, at most, "past exposure to illegal conduct." He is no longer housed at CSP-Sac, where the medical defendants worked and the alleged wrongdoing took place. (See FAC, ¶ 2). The FAC does not address plaintiff's medical care at his current institution, and he makes no specific allegations that the 1994 settlement is being, or has

---

[6] The court disregards plaintiff's 602 appeals concerning medication, as claims based on the alleged denial of post-surgical pain medication have been screened out. (ECF No. 44 at 10.)

[7] The legal principles applicable to a request for injunctive relief are well established. To prevail, the moving party must show either a likelihood of success on the merits and the possibility of irreparable injury, or that serious questions are raised and the balance of hardships tips sharply in the movant's favor. See Coalition for Economic Equity v. Wilson, 122 F.3d 692, 700 (9th Cir. 1997); Oakland Tribune, Inc. v. Chronicle Publ'g Co., 762 F.2d 1374, 1376 (9th Cir. 1985). The two formulations represent two points on a sliding scale with the focal point being the degree of irreparable injury shown. Oakland Tribune, 762 F.2d at 1376. "Under any formulation of the test, plaintiff must demonstrate that there exists a significant threat of irreparable injury." Id. In the absence of a significant showing of possible irreparable harm, the court need not reach the issue of likelihood of success on the merits. Id.

1 recently been, breached.

2 In opposition, plaintiff points out that the 1994 agreement expressly allowed for plaintiff to sue prison officials for specific performance in the event of breach.  (FAC, Ex. B at 40) ("[I]n the event that any provision of this Agreement is not implemented the Claimant may bring an action against the Director to obtain performance of any of the provisions of this Agreement.")  Plaintiff argues that, while defendants "may very well be able to establish at a later stage in the proceedings that CDCR is in compliance with the 1994 Settlement[,] . . . at this stage, Plaintiff's allegations are entitled to a construction of his complaint in a light most favorable to him."  (ECF No. 91 at 18, n.23.)

In order to survive dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must contain more than a "formulaic recitation of the elements of a cause of action"; it must contain factual allegations sufficient to "raise a right to relief above the speculative level."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).

Here, the undersigned concludes that plaintiff has alleged merely a speculative right to the injunctive relief he seeks.  There are no specific facts alleged that suggest that, as of the 2014 filing of the FAC, he was at a risk of serious harm from unnamed medical staff's failure to follow Dr. Grekin's orders.  Plaintiff has not submitted any recent 602 appeals to this effect, for instance.  The most recent records submitted with the FAC concern his treatment in 2011.

In sum, the undersigned concludes that plaintiff has asserted timely breach of contract claims based on the failure to follow Dr. Grekin's post-surgical orders in 2010.  However, as plaintiff seeks only injunctive relief against the CDCR defendants, but has not plausibly alleged a risk of impending harm, his claims against these defendants must be dismissed under Rule 12(b)(6).

////

////

////

10

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Defendants Hamkar, Ali, Nangalama, Tharratt, Toche, and Beard's motion to dismiss (ECF No. 82) be granted in part and denied in part, as follows:

    a. Denied as to plaintiff's Eighth Amendment claims against Hamkar, Ali, and Nangalama; and

    b. Granted as to plaintiff's contract claims against Tharratt, Toche, and Beard.

2. Defendant Kelso's motion to dismiss (ECF No. 85) be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated: August 14, 2015

                                      _/s/ Carolyn K. Delaney_____
                                      CAROLYN K. DELANEY
                                      UNITED STATES MAGISTRATE JUDGE

2 / rush0562.mtd_sol